**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JASON MOLLOY and RUEL TANEGA, on behalf of themselves and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REGAL CLAIM SERVICES OF NEW YORK, LLC and REGAL CLAIM SERVICES, LLC d/b/a RC SERVICES, LLC,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jason Molloy and Ruel Tanega ("Named Plaintiff"), on behalf of themselves and others similarly situated (collectively "Plaintiffs"), allege, upon personal knowledge as to themselves, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CLAIMS

1. Defendants Regal Claim Services of New York, LLC and Regal Claim Services, LLC d/b/a RC Services, LLC (collectively "Defendants" or "Regal") provide claims investigation and surveillance services to commercial insurance companies in 18 states.

2. Regal employs Investigators and Adjusters (hereinafter collectively referred to as "Investigators") as non-exempt hourly workers in New York to perform surveillance, claims investigation, and related investigative work.

3. Regal engages in a common, willful, and deliberate policy and practice of failing to compensate Investigators in accordance with the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

4. First, Regal engages in a common pattern and practice of denying Investigators payment for all hours worked, including overtime compensation.

5. Regal also fails to timely pay Investigators their wages, and issues its Investigators wage notices and wage statements that do not reflect their hourly rate of pay, overtime rate, or actual hours worked, and, thus, are inaccurate and unlawful under the NYLL causing concrete harm to Investigators.

6. To redress these wrongs, Named Plaintiffs bring claims against Regal under the FLSA, as a collective action pursuant to 29 U.S.C. § 216(b) and applicable regulations thereunder, on behalf of themselves and all other similarly situated persons employed by Defendants as Investigators in the State of New York at any time during the full statute of limitations period.

7. Named Plaintiffs also bring claims under the NYLL as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves and all other similarly situated persons employed by Defendants as Investigators in the State of New York at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

8. Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

9. The Court also has supplemental jurisdiction over Plaintiffs' related claims arising under State and local law pursuant to 28 U.S.C. § 1367.

10. Venue is proper under 28 U.S.C. § 1391 because Defendants' principal place of business is located in this District and a substantial portion of the events or omissions giving rise to this action occurred in this District.

11. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

12. Plaintiffs are residents of the State of New York.

13. Plaintiffs were employed by Defendants as Investigators during the statute of limitations period.

14. At all relevant times, Plaintiffs were "employees" of Defendants within the meaning of all applicable statutes and regulations.

15. Defendant Regal Claim Services of New York, LLC is a domestic limited liability company with a principal place of business located at 112 West 34th Street, 18th floor, New York, NY 10120.

16. Defendant Regal Claim Services, LLC d/b/a RC Services, LLC is a foreign limited liability company with a principal place of business at 2400 Lakewood Parkway, Suite 475, Alpharetta, GA, 30009, and doing business in numerous locations across the country including business in the State of New York.

17. Defendants are, upon information and belief, an enterprise engaged in commerce or in the production of goods for commerce., because, *inter alia,* Defendants provide claims investigation, surveillance, and adjustment services in connection with insurance claims arising from incidents involving goods, materials, and instrumentalities that have been produced for and moved in commerce, and, upon information and belief, Defendants' annual gross volume of business is at least $500,000.00. Such services are performed for insurance companies, third-party administrators, and businesses operating in interstate commerce, including those engaged in construction, transportation, and retail. Defendants also utilize equipment, including cameras, recording devices, computers, and other materials, that have been produced for and moved in

commerce.

18. At all relevant times, Defendants were "employers" within the meaning of all applicable statutes and regulations.

## FACTS

### A. Background

19. For over 25 years, Regal has provided claims investigation and surveillance services to commercial insurance companies in 18 states.

20. Regal employs Investigators and Adjusters (collectively referred to as "Investigators") who work in New York as non-exempt hourly employees to perform surveillance, claims investigation, and related investigative work.

21. Investigators' job duties include, *inter alia*: (i) conducting visual surveillance of individuals in the field; (ii) uploading and time-stamping surveillance to Regal's system; (iii) drafting surveillance reports; (iv) making copies of documents and delivering documents; (v) retrieving police reports and documents from courts; (vi) photographing investigation scenes; and (vii) locating witnesses, amongst other work.

22. Regal subjects its Investigators to several common policies and practices that violate the rights of those Investigators under the FLSA and NYLL.

23. First, Regal fails to pay Investigators for their actual hours worked.

24. Specifically, Regal pays Investigators per "billable unit" instead of per hour worked.

25. Billable units are hours Regal charges to its clients, however, Regal instructs Investigators that they cannot record billable units for all tasks Investigators perform, such as certain administrative work, internal communications, attending company meetings and tasks

performed after a client's budget is exhausted.

26. Regal's unlawful policy and practice of paying Investigators for only billable units results in Investigators not receiving compensation for all hours that they work.

27. Importantly, Regal requires Investigators to complete their assignments in full regardless of billing limitations. Thus, Investigators are often required to work additional time that can not be recorded as billable units, particularly when assignments extend beyond approved budgets or require follow-up work.

28. Investigators are expected to perform a minimum of 200 billable units per month.

29. Investigators who routinely perform in excess of 200 billable units per month, are viewed favorably and praised by Regal for their productivity.

30. Given Regal's expectation for Investigators to perform a minimum of 200 billable units per month, Investigators routinely work in excess of forty hours per week.

31. Nevertheless, Regal engages in a common pattern and practice of denying Investigators the legally required overtime premium for all hours worked in excess of forty (40) hours per work week.

32. Regal has actual or constructive knowledge of Investigators' hours worked because Regal maintains records of Investigators' work activity, billable units performed, email correspondence and case assignments in an electronic case management system known as FileTrac.

33. FileTrac documents nearly all aspects of Investigators' work activity, including assignments, reporting, communications, and case-related tasks.

34. Despite Regal's knowledge of Investigators' work activity that resulted in Investigators routinely working more than forty hours per week, Regal fails to pay Investigators

legally required overtime compensation.

35. Regal pays Investigators non-discretionary bonuses based on performance metrics that Regal should have been included in calculating Investigators' overtime rate.

36. The NYLL also requires that employers, including Regal, provide Plaintiffs with a Notice and Acknowledgment of Payrate and Payday when they are hired and at any point during their employment when their payrate or payday changes.

37. Regal has failed to furnish Investigators with Notice and Acknowledgments of Payrate and Payday showing their hourly payrate and overtime rate throughout the statutory period.

38. The NYLL further requires that employers, including Regal, issue or provide employees with accurate wage statements with each payment of wages.

39. Regal has failed to furnish Investigators with accurate wage statements showing their actual hours worked, overtime rate, or their hourly payrate throughout the statutory period.

40. In violation of NYLL, Regal pays Investigators once per month instead of on a weekly basis.

41. Thus, Plaintiffs' monthly wage statements do not reflect the specific week in which Plaintiffs' received non-discretionary bonuses which obscured the proper overtime rate Plaintiffs should have received.

42. Failing to inform Investigators of their actual hours worked, proper overtime rate, and hourly payrate was part of Regal's scheme to deprive them of their unpaid wages and overtime compensation.

43. As a result of Regal's failure to provide Investigators with accurate wage notices when they are hired and accurate wage statements with each payment of wages, the Investigators

have suffered concrete harm.

44. By routinely failing to provide Investigators with accurate information, Regal made it more difficult for Investigators to determine whether and to what extent they were underpaid each week, thus, impinging on their rights and their ability to advocate for proper pay.

45. As a result of Regal's actions, the Investigators have been prevented from, *inter alia*: (i) realizing their actual hours worked; (ii) realizing that they were underpaid and by how much; and (iii) taking appropriate action to obtain the payments due to them.

**B. <u>Plaintiff Jason Molloy</u>**

46. Plaintiff Molloy was employed by Regal as an hourly Investigator from approximately January 2020 until approximately March 2023.

47. Plaintiff Molloy's job duties included, *inter alia*: (i) conducting visual surveillance of individuals in the field; (ii) uploading and time-stamping surveillance to Regal's system; (iii) drafting surveillance reports, and other related work.

48. Regal paid Plaintiff Molloy approximately $32 per billable unit when he began working as an hourly Investigator, and approximately $40 per billable unit when he ceased working as an hourly Investigator in March 2023.

49. Plaintiff Molloy performed tasks that Regal would not recognize as billable units, thus, Plaintiff Molloy was not paid for all hours that he worked.

50. Plaintiff Molloy typically worked 5 to 7 days per week, and 8 to 10 hours per day. On some occasions, Plaintiff Molloy worked 12 to 16 hours per day.

51. Plaintiff Molloy routinely worked more than forty hours per week, but he was not paid overtime compensation at a rate of not less than one and one-half times his regular rate of pay for hours worked beyond forty in any given week.

52. Regal had actual or constructive knowledge of Plaintiff Molloy's hours worked because Plaintiff Molloy entered his work activity, including billable units performed, administrative tasks, email correspondence and case related tasks into FileTrac.

53. Regal paid Plaintiff Molloy once per month instead of weekly.

54. Regal paid Plaintiff Molloy non-discretionary bonuses based on performance metrics, such as billable units.

55. When Plaintiff Molloy began working for Regal as an Investigator, he was not issued a Notice and Acknowledgment of Payrate and Payday that showed his hourly rate of pay and overtime rate.

56. While working as an hourly Investigator, Plaintiff Molloy was not issued accurate wage statements, as the NYLL requires.

57. Regal issued monthly wage statements to Plaintiff Molloy that failed to show his actual hours worked, overtime rate, or hourly payrate.

58. Plaintiff Molloy's monthly wage statements did not reflect the specific week in which he received non-discretionary bonuses which obscured the proper overtime rate he should have received.

59. Regal's failure to inform Plaintiff Molloy of his actual hours worked, overtime rate, or hourly payrate was part of Regal's scheme to deprive Plaintiff Molloy of his unpaid wages and overtime compensation.

60. As a result of Regal's failure to provide Plaintiff Molloy with accurate wage notices and wage statements with each payment of wages, Plaintiff Molloy has suffered concrete harm.

61. By failing to provide Plaintiff Molloy with accurate information, Regal made it more difficult for Plaintiff Molloy to determine whether and to what extent he was underpaid each

week, thus, impinging on his rights and ability to advocate for proper pay.

62. As a result of Regal's actions, for years, Plaintiff Molloy was prevented from, *inter alia*: (i) realizing his actual hours worked; (ii) realizing that he was underpaid and by how much; and (iii) taking appropriate action to obtain the payments due to him.

**C. Plaintiff Ruel Tanega**

63. Plaintiff Ruel Tanega ("Tanega" or "Plaintiff Tanega") was employed by Defendants as an Investigator and adjuster from approximately 2009 until approximately 2025.

64. Plaintiff Tanega's job duties included, *inter alia*: (i) making copies of documents and delivering documents; (ii) retrieving police reports and documents from courts; (iii) photographing investigation scenes; (iv) locating witnesses; (v) serving complaints and subpoenas, and other related work.

65. Regal paid Plaintiff Tanega approximately $31 per billable unit for his work as an Investigator.

66. Plaintiff Tanega performed tasks that Regal would not recognize as billable units, thus, Plaintiff Tanega was not paid for all hours that he worked.

67. Plaintiff Tanega typically worked 5 days per week, and 10 to 11 hours per day. On some occasions, Plaintiff Tanega worked 12 to 16 hours per day.

68. Plaintiff Tanega routinely worked more than forty hours per week, but he was not paid overtime compensation at a rate of not less than one and one-half times his regular rate of pay for hours worked beyond forty in any given week.

69. Regal had actual or constructive knowledge of Plaintiff's hours worked because Plaintiff entered his work activity, including billable units performed, administrative tasks, email correspondence and case related tasks into FileTrac.

70. Regal paid Plaintiff Tanega once per month instead of on a weekly basis.

71. Regal Paid Plaintiff Tanega non-discretionary bonuses based on performance metrics, such as billable units.

72. When Plaintiff Tanega began working for Regal as an Investigator, he was not issued a Notice and Acknowledgment of Payrate and Payday that showed his hourly rate of pay and overtime rate.

73. While working as an Investigator, Plaintiff Tanega was not issued accurate wage statements, as NYLL requires.

74. Regal issued monthly wage statements to Plaintiff Tanega that failed to show his actual hours worked, overtime rate, or hourly payrate.

75. Plaintiff Tanega's monthly wage statements did not reflect the specific week in which he received non-discretionary bonuses which obscured the proper overtime rate he should have received.

76. Regal's failure to inform Plaintiff Tanega of his actual hours worked, overtime rate, or hourly payrate was part of Regal's scheme to deprive Plaintiff of his unpaid wages and overtime compensation.

77. As a result of Regal's failure to provide Plaintiff Tanega with accurate wage notices and wage statements with each payment of wages, Plaintiff Tanega has suffered concrete harm.

78. By failing to provide Plaintiff Tanega with accurate information, Regal made it more difficult for Plaintiff Tanega to determine whether and to what extent he was underpaid each week, thus, impinging on his rights and ability to advocate for proper pay.

79. As a result of Regal's actions, for years, Plaintiff Tanega was prevented from, *inter alia*: (i) realizing his actual hours worked; (ii) realizing that he was underpaid and by how much;

and (iii) taking appropriate action to obtain the payments due to him.

## FLSA COLLECTIVE ACTION ALLEGATIONS

80. Plaintiffs bring FLSA claims as a collective action on behalf of themselves and all other similarly situated persons who have been employed by Defendants as Investigators in the State of New York during the full statute of limitations period (the "FLSA Collective").

81. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.

82. During the statutory period, as Investigators, Plaintiffs and the similarly situated employees routinely worked in excess of forty (40) hours per week without overtime compensation.

83. At all relevant times, Plaintiffs and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendants' practice of failing to pay overtime.

84. Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective.

85. As a result of their unlawful conduct, Defendants are liable to Plaintiffs and the FLSA Collective for the full amount of their unpaid wages with interest, an equal amount as liquidated damages, and reasonable attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

86. Plaintiffs are currently unaware of the identities of the individual members of the

FLSA Collective.

87. Accordingly, the Court should require Defendants to provide Plaintiffs with a list of all members of the proposed FLSA Collective, along with their last known addresses, telephone numbers, and email addresses, so Plaintiffs may provide the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate.

## CLASS ACTION ALLEGATIONS

88. Plaintiffs bring their NYLL claims as a class action under FRCP 23.

### A. Class Definition

89. Named Plaintiffs seek to maintain claims, pursuant to FRCP 23, on behalf of themselves and a class of all other Investigators who have been employed by Regal in the State of New York at any time during the full statute of limitations period (the "Class").

90. Named Plaintiffs allege, on behalf of themselves and the Class, that Regal violated the NYLL by, *inter alia*: (i) failing to compensate Named Plaintiffs and the Class for all hours worked; (ii) failing to compensate Named Plaintiffs and the Class at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek; (iii) failing to timely pay Plaintiffs; (iv) failing to furnish accurate Notice and Acknowledgments of Payrate and Payday; and (v) failing to furnish accurate wage statements.

91. Named Plaintiffs and the Class have standing to seek class-wide relief under the NYLL because of the adverse effects that Regal's wage practices have had on them individually and as a group.

92. The wage practices described herein are part of Regal's normal course of conduct.

93. Pursuant to FRCP 23, Plaintiffs' NYLL claims may be pursued by all similarly situated persons who do not opt out of the Class.

**B. Numerosity and Impracticability of Joinder**

94. The members of the Class are so numerous that joinder is impracticable.

95. While the exact number of the members of the Class is unknown to Plaintiffs at this time, upon information and belief, there are at least 40 members of the Class.

96. Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**C. Common Questions of Law and Fact**

97. Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the Class and predominate over any questions only affecting the members of the Class individually.

98. The questions of law and fact that are common to Named Plaintiffs and the Class include, without limitation:

(a) Whether Regal failed to pay Plaintiffs all wages owed to them;

(b) Whether Regal failed to pay Plaintiffs all overtime wages owed to them;

(c) Whether Regal failed to timely pay Plaintiffs their wages;

(d) Whether Regal failed to furnish accurate Notice and Acknowledgments of Payrate and Payday to Plaintiffs;

(e) Whether Regal failed to furnish accurate wage statements to Plaintiffs; and

(f) Whether Plaintiffs are entitled to liquidated damages.

99. Therefore, the common question requirement of FRCP 23(a) is satisfied.

**D. Typicality of Claims and Relief Sought**

100. Named Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent.

101. Named Plaintiffs and the Class work or have worked for Regal and are or were subject to the same compensation policies and practices.

102. The wage violations suffered by Named Plaintiffs, and the damages resulting therefrom, are typical of Regal's treatment of the Investigators who comprise the Class.

103. Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**E. Adequacy of Representation**

104. Named Plaintiffs will fairly and adequately protect the interests of the Class because Named Plaintiffs' interests are coextensive and aligned with those of the Class Members.

105. Named Plaintiffs have no interests adverse to the Class they seek to represent.

106. Named Plaintiffs are willing and able to represent the Class fairly and vigorously.

107. Named Plaintiffs have retained competent counsel who are qualified and experienced in employment class action litigation and able to meet the demands necessary to litigate a class action of this size and complexity.

108. The combined interests, experience, and resources of Named Plaintiffs and their counsel to competently litigate the claims at issue in the instant class action satisfy the adequacy of representation requirement of FRCP 23(a).

**F. Requirements of Rule 23(b)(3)**

109. The common issues of fact and law affecting Named Plaintiffs' claims and those of the Class—including, without limitation, the common issues identified in the paragraphs above—predominate over issues affecting only individual claims.

110. A class action is superior to other available means for the fair and efficient adjudication of Named Plaintiffs' claims and those of the Class.

111. The cost of proving Regal's pattern and practice of denying all wages due, including overtime compensation, makes it impractical for the members of the Class to pursue their claims individually.

112. This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the Class (they must have worked for Regal as Investigators in the State of New York during the statutory period), as well as the common questions of law and fact described herein.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME**
***(On Behalf of Plaintiff Tanega and the FLSA Collective)***

113. Plaintiffs hereby repeat and reallege the foregoing allegations as if set forth fully herein.

114. During the full statutory period, Plaintiff Tanega and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

115. The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

116. Plaintiff Tanega and the FLSA Collective are not exempt from the requirement that their employer pay them overtime under the FLSA, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

117. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff Tanega and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for time spent performing work in excess of 40 hours in a workweek.

118. As a result of Defendants' failure to compensate Plaintiff Tanega and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours

worked in excess of 40 hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

119. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff Tanega and the FLSA Collective in accordance with the FLSA and/or applicable regulations thereunder.

120. Defendants' violations of the FLSA have significantly damaged Plaintiff Tanega and the FLSA Collective and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME**
**(*On Behalf of Plaintiffs and the Class*)**

121. Plaintiffs hereby repeat and reallege the foregoing allegations as if set forth fully herein.

122. During the statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

123. The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

124. Plaintiffs and the Class are not exempt from the requirement that Defendants pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

125. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the Class at a rate not less than one and

one-half times their regular rate of pay for time spent performing work in excess of 40 hours in a workweek.

126. As a result of Defendants' failure to compensate Plaintiffs and the Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

127. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

128. Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED**
**(*On Behalf of Plaintiffs and the Class*)**

129. Plaintiffs hereby repeat and reallege the foregoing allegations as if set forth fully herein.

130. During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

131. The NYLL requires covered employers, including Defendants, to compensate Plaintiffs and the Class at their established regular rates of pay for all hours worked in a workweek.

132. Plaintiffs and the Class were not exempt from this requirement and are entitled to be paid by Defendants at their established regular rates of pay for all hours worked during the full

statute of limitations period.

133. Throughout the full statute of limitations period, Defendants have engaged in a common policy and practice of failing to pay Plaintiff and the Class at their established regular rates of pay for all hours worked.

134. Defendants pay Plaintiffs per "billable units" instead of per hour worked. Because Defendants instruct Plaintiffs that they cannot record billable units for all tasks performed, Plaintiffs are not compensated for all hours that they worked.

135. As a result of Defendants' failure to compensate Plaintiffs and the Class at their established regular rates of pay for all hours worked, Defendant has violated the NYLL and/or applicable regulations thereunder, including, *inter alia*, NYLL § 191, 193 and § 198.

136. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs in accordance with the NYLL.

137. Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO TIMELY PAY WAGES**
**(*On Behalf of Plaintiffs and the Class*)**

138. Plaintiffs hereby repeat and reallege the foregoing allegations as if set forth fully herein.

139. Plaintiffs are manual workers within the meaning of NYLL, § 190(4).

140. As manual workers, Defendants were required to pay Plaintiffs "not later than seven days after the end of the week in which the wages are earned." NYLL § 191(1)(a)(i).

141. Defendants paid Plaintiffs once per month.

142. Accordingly, Defendants failed to pay Plaintiffs for the first seven days they worked during each period within seven days at the end of that week, thereby violating NYLL § 191(1)(a)(i).

143. Defendants' violations of NYLL § 191(1)(a)(i) have significantly damaged Plaintiffs and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, interest, and attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: INACCURATE WAGE STATEMENTS**
**(*On Behalf of Plaintiffs and the Class*)**

144. Plaintiffs hereby repeat and reallege the foregoing allegations as if set forth fully herein.

145. During the full statutory period, Plaintiffs were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

146. The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage . . . and net wages."

147. The NYLL further requires "[f]or all employees who are not exempt from overtime compensation…the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."

148. Plaintiffs were not exempt from the requirement that Defendants provide them with

accurate wage statements.

149. Throughout the full statute of limitations period, Defendants have engaged in a common policy and practice of unlawfully failing to furnish accurate wage statements to Plaintiffs.

150. Indeed, Defendants failed to include Plaintiffs' hourly rates of pay, overtime rate, and their actual hours worked on their wage statements.

151. Plaintiffs' wage statements also did not reflect the specific week in which Plaintiffs' received non-discretionary bonuses which obscured the proper overtime rate Plaintiffs should have received.

152. Failing to inform Plaintiffs of their actual hours worked, overtime rate, and hourly rates of pay was part of Defendants' scheme to deprive them of their proper overtime compensation.

153. As a result of Defendants' failure to provide Plaintiffs with accurate wage statements with each payment of wages, Plaintiffs have suffered concrete harm.

154. By routinely failing to provide Plaintiffs with accurate information, Defendants made it more difficult for Plaintiffs to determine whether and to what extent they were underpaid each week, thus, impinging on their rights and their ability to advocate for proper pay.

155. Defendants' unlawful actions prevented Plaintiffs from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid and by how much; and (iii) taking appropriate action to obtain the payments due to them.

156. As a result of Defendants' failure to furnish accurate wage statements to Plaintiffs, Defendants have violated, *inter alia*, NYLL § 195.

157. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to furnish proper wage statements to Plaintiffs in accordance with the NYLL.

158. Defendants' violations of the NYLL have significantly damaged Plaintiffs and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, $250 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PROVIDE 195.1 WAGE NOTICE**
**(*On Behalf of Plaintiffs and the Class*)**

159. Plaintiffs hereby repeat and reallege the foregoing allegations as if set forth fully herein.

160. Defendants have willfully failed to supply Plaintiffs with the required Notice and Acknowledgment of Payrate and Payday under NYLL § 195.1(a) within 10 business days of their first employment date that shows Plaintiffs hourly rate of pay and overtime rate.

161. Due to Defendants' violations of NYLL § 195.1, Plaintiffs are entitled to recover from Defendants $50.00 for each work day that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. NYLL § 198(1)-b.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Class, respectfully requests that the Court:

A. Declare that the practices complained of herein are unlawful under applicable federal and State law;

B. Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

C. Designate Named Plaintiff Tanega as a representative of the FLSA Collective, and his counsel of record as class counsel;

D. Determine the damages sustained by Plaintiff Tanega and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendant and in favor of Plaintiff Tanega and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

E. Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiffs with a list of all members of the Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to opt out;

F. Designate Named Plaintiffs as the representative of the Class, and their counsel of record as class counsel;

G. Determine the damages sustained by Plaintiffs and the Class as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiffs and the Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H. Award Plaintiffs, the FLSA Collective, and the Class an additional equal amount as liquidated damages because Defendants' violations were without a good faith basis;

I. Award Plaintiffs, the FLSA Collective, and the Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

J. Grant Plaintiffs, the FLSA Collective, and the Class such other and further relief

that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Named Plaintiffs, on behalf of themselves, the FLSA Collective, and the Class hereby demand a trial by jury on all issues of fact and damages.

Dated: April 15, 2026
New York, New York

**VIRGINIA & AMBINDER, LLP**

By: *_/s/LaDonna Lusher_*

LaDonna Lusher
40 Broad Street, 7th Floor
New York, New York 10004
Telephone: (212) 943-9080
llusher@vandallp.com